UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MARINO NUNEZ,              )
                           )   Crim. No. 01-10260
        Petitioner,        )
                           )   CA1# 03-1265
    v.                     )
                           )   04 10993 RCL
UNITED STATES OF AMERICA,  )
                           )
        Respondent.        )
                               MAGISTRATE JUDGE Swartwood US

PETITION TO VACATE OR SET ASIDE CONVICTION
AND/OR SENTENCE PURSUANT TO 28 U.S.C. § 2255

NOW COMES MARINO NUNEZ, Petitioner, Pro Se, in the above-captioned proceeding, (hereinafter "Nunez"), who respectfully requests that this Honorable Court grant the relief as requested in this Petition to Vacate or Set Aside the Above-numbered conviction, and/or to Vacate or Modify the Sentence imposed therein, pursuant to 28 U.S.C. § 2255, and in support thereof states as follows:

1) On or about May 30, 2001, Nunez was arrested and taken into custody for violations of the Controlled Substances Act of 1970, as alleged in a criminal complaint filed with the District Court of the District of Massachusetts.

2) Nunez was detained pending a detention hearing that was enventually held on June 11, 2001, and an Order of detention pending disposition of the case was entered on or about June 18, 2001.

3) On or about July 18, 2001, Nunez was indicted by a federal grand jury and charged in a five-count indictment with violations of 21 U.S.C. §§ 841(a) & 846, and 18 U.S.C. § 2.

4) On or about September 17, 2002, Nunez entered a plea of guilty to all counts of the indictment before this Court.

5) On or about February 10, 2003, Nunez was sentenced to a

(113)

term of incarceration of 108 months, to be followed by four (4) years supervised release for counts 1 and 5, and three (3) years supervised release for counts 2, 3, and 4.

6) On September 10, 2003, the Court of Appeals for the First Circuit affirmed the conviction and sentence, and the Court's mandate was filed on or about October 1, 2003.

7) Nunez did not file a Petition for a Writ of Certiorari in the U.S. Supreme Court and, as a result, the one (1) year statute of limitations within which to file a 28 U.S.C. § 2255 petition began to run on or about December 31, 2003, making Nunez'a petition well within the statute of limitations period under the A.E.D.P.A.

## RELEVANT FACTS

8. Nunez was charged in a five (5) count indictment with violations of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.

9. Counts one and five of the indictment alleged violations of 846 and 841(a)(1), respectively, and claiming that the offenses involved 100 grams or more of heroin.

10. Counts two through four alleged distribution violations claiming to involve no specified amount.

11. At sentencing Nunez was held accountable for an amount of heroin in the 400-700 grams range based upon the alleged amounts supposedly recorded by law enforcement officials. Nunez was also held accountable as a leader or organizer and his sentencing offense-level was increased by four points.

12. Nunez was also determined to have committed the offense, for relevant conduct purposes, while he was still under a probationary sentence with the Massachsetts state court, thus adding two extra points to his criminal history score of three (3), and placing him in Criminal History Category III for sentencing purposes.

ment in criminal history points for Nunez allegedly committing the offense while on state probation, thereby placing him in Criminal History category III. Nunez thereby establishes the requisite "cause" and "prejudice" on his former attorneys' parts that entitle him to raise these issues now and not be barred. See <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).

## ARGUMENT

I. NUNEZ WAS ERRONEOUSLY AND UNLAWFULLY ENHANCED FOR A LEADERSHIP AND/OR ORGANIZER ROLE.

18. Then district court's conclusion that Nunez took on a leadership role in the commission of the offenses is unsupported by the facts and circumstances of the case, and is contrary to the case law precedent now in existence.

19. In each transaction that Nunez pled guilty to he only acted as a street vendor for said transactions. As argued at the sentencing hearing, "what Mr. Nunez basically is with respect to this conspiracy that he's pled guilty to is a soldier who conspires on a case-by-case kind of basis individually with Ms. Tejada on the May transaction, the approximate 550-gram transaction, with Mr. Guaba on the - I believe the second transaction, which would be the April 11, 2001 transaction for 30 grams." See Trial transcripts, p. 6, and Appeal transcript, p. 55.

20. In both the April 5, 2001, transaction, which "Felix" takes over and assumes the leadership role, and the May 4, 2001, transaction, which Hector Figueroa Borrero takes over and assumes the leadership role, Nunez cannot be held accountable as the leader either under the facts or the law.

21. In the May 31, 2001, transaction, where Nunez himself was present and was arrested, it cannot be said that he was the leader, but was actually carrying out the orders of someone else who was the

4

leader. This argument was made at sentencing, i.e., that Nunez, if he were a leader, would not be the one delivering that large quantity of heroin with all its attendant risks.

22. A leader or organizer would necessarily shield himself from these types of risks and hire other "soldiers" to act at his direction, rather than appearing at the scene of such a large transaction. As a result, the nature of Nunez's participation in these transactions leads to the inescapable conclusion that his role was one of a sub-ordinate acting at the direction and control of a superior.

23. Likewise, the quality of the heroin is not indicative of Nunez being a leader or organizer. The fact that the heroin was of a purer quality on certain occassions does not mean that Nunez was more than a hired subordinate in the offense activity. All it does is place him in the position of a trusted foot soldier by a "higher-up" who is the leader or organizer. Indeed, the purity of the heroin was not even consistent, where two transactions involved heroin-purity of 94% and 95%, while the other two involved purity of 44% and 65%.

24. As to the offense conduct being "otherwise extensive" for leadership-role purposes, there was nothing extensive about the con-duct of the alleged overall conspiracy. This is so where Nunez's actions can only best be described as individual buy-and-sell opera-tions for the speificially alleged conduct on the various days.

25. Neither Guaba, Felix, Borrerro, or Tejada, had any connec-tion to each other in order to form a conspiracy. They all had "only" an individual relationship to Nunez, not with each other. They never conspired with each other to commit a drug offense. They only agreed to a transaction with Nunez on individual bases. Therefore, the five-person involvement conduct does not exist, as a matter of law or fact, for the alleged conspiracy. See U.S.S.G. § 3B1.1

26. As the four individuals mentioned herein can only be connected to Nunez for "individual" and "separate" drug transactions, the leadership role applied to Nunez is unlawful and inappropriate where <u>all five</u> people are not a part of the same organization, and have not agreed to commit drug offenses as a "unit". It was not even proved that all of these individuals knew each other. It can only be said that Nunez had some type of dealing with each of them individually, but not as a leader directing all of their activities for one common goal in an organization consiting of all of these people.

27. As the activity was not extensive within the meaning of §3B1.1, there were not five participants in the alleged criminal conduct who were working <u>as a unit</u> under the direction of Nunez, and the purity of the heroin is not a sufficient factor to make Nunez a leader or organizer for purposes of the U.S. Sentencing Guidelines, Nunez should be relieved of the leadership role four-point enhancement. See <u>U.S. v. Robbio</u>, 186 F.3d 37 (1st Cir.); <u>U.S. v. D'Andrea</u>, 107 F.3d 949 (1st Cir. 1997); <u>U.S. v. Lopez-Lopez</u>, 295 F.3d 165 (1st Cir. 2002).

28. Although this issue was argued on direct appeal, and would ordinarily be procedurally barred from being raised in a § 2255 petition, this Court, as well as the U.S. Supreme Court, has permitted attacks on sentences that a petitioner is "actually innocent" of. See <u>U.S. v. Maybeck</u>, 23 F.3d 888 (4th Cir. 1990); <u>Haley v. Cockrell</u>, 306 F.3d 257, at 264 (5th Cir. 2002); <u>Murray v. Carrier</u>, 477 US 478(1985).

29. This Court, as well as other circuit courts and the Supreme Court, permits an attack on a conviction or sentence that is procedurally barred when the petitioner can show "cause and prejudice", that a "mis carriage of justice" would ensue, or "actual innocence." <u>Woodward v. Collins</u>, 898 F.2d 1027 (5th Cir. 1990); <u>Murray v. Carrier</u>, supra; <u>Smith v. Collins</u>, 977 F.2d 951, 959 (5th Cir. 1992); <u>U.S. v.</u>

6

Frady, 456 U.S. 152, 167-68 (1982); U.S. v. Maybeck, supra; U.S. v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); Davis v. U.S., 417 U.S. 333, 345-46 (1974); 28 U.S.C. § 2255; Herrera v. Collins, 506 U.S. 390, 404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992); Kuhlman v. Wilson, 477 U.S. 436 (1986)(hearing of successive claim on "miscarriage of justice" grounds). See also Glover v. U.S., 531 U.S. 198 (2001). Nunez has made the requisite showing to overcome any alleged procedural bar.

II. NUNEZ DID NOT COMMIT THE OFFENSES PLED GUILTY TO WHILE ON PROBATION, AND THE EVIDENCE USED TO MAKE THAT DETERMINATION VIOLATED NUNEZ'S DUE PROCESS AND CONFRONTATION CLAUSE RIGHTS.

30. Nunez was enhanced an extra two points for alleged committing the offenses charged while on state probation. This placed Nunez in Criminal History category III, and subjected him to an enhanced sentence of 108-135 months under the U.S.S.G. This sentence includes the four-point enhancement for leadership role.

31. Without the extra two points for allegedly committing the offenses while on probation, Nunez, even with the four point enhancement for leadership role, would have only been eligible for a sentence of 97-121 months under the U.S.S.G. This issued was not argued on direct appeal, and it is the appellate attorney's fault that caused the prejudice that has ensued. See Glover v. U.S. 531 U.S. 198 (2001).

32. The only evidence that was used to make a finding that Nunez committed the offenses while on probation was the testimonial statement of co-defendant Tejada, that Nunez never had an opportunity to challenge through cross-examination. This violates the 6th Amendment Confrontation Clause as recently decided by the U.S. Supreme Court in Crawford v. Washington, No. 02-9410, decided March 8, 2004.

33. The Supreme Court, in Crawford, supra, overturned its prior Confrontation Clause case law precedent, as set forth in Ohio v.

7

Roberts, 448 U.S. 56 (1980), by holding that convictions can no longer stand that were based, in part, upon evidence admitted in the form of testimonial statements by a party that the defendant never had an opportunity to cross-examine. The Supreme Court held that the so-called "Roberts Test" of reliability of an out-of-court statement, failed to interpret teh Constitution ina way that secures its intended constraint on judicial discretion, and that the Constitution prescribes the procedure for determining the reliability of testimony in criminal trials, and that it [the Supreme Court], no less than the state courts, lacks authority to replace ti with one of its own devising.

34.  As Ms. Tejada was not unavailable to testify in court during the sentencing phase of Nunez's criminal proceedings, and Nunez never had an opportunity to previously cross-examine her concerning her allegations of conduct performed by her at the behest of Nunez during the period Nunez was still on state probation, the court erroneously accepted Ms. Tejada's out-of-court testimonial statement and used it to determine that Nunez committed a criminal offense, even if alleged to be relebvant conduct, while on probation.  Nunez never admitted to comitting any relevant conduct acts while on probation, and none of the offense to which he pled guilty occured while he was on probation.

35.  For that reason alone, Nunez's sentence must be reduced, as he is actually innocent of the two extra points that made him fall into Criminal History category III, and his Sixth Amendment Confrontation Clause right was violated in doing so, along with his Due Process rights.

36.  Even with the four-point enhancement, and a Criminal History category of II, Nunez is eligible for a sentence within the 97-121 month range.  Nunez, however, alleges, and has shown, that he is

entitled to be sentenced at offense level 25, as opposed to offense level 29, due to the fact that he was not a leader or organizer in the offenses. If any other alleged co-defendant or alleged co-conspiratory claims that he was, their out-of-court testimonial statements, that Nunez never had an opportunity to test through cross-examination under oath, are inadmissible. Furthermore, Nunez never admitted that what the government claims to have recorded on tape during their surveillance of the offense charged, actually existed. Nunez never saw the conduct that was ascribed to him on tape. Neither did the government ever prove that what they claim occurred during their surveillance, actually occurred with respect to the role Nunez allegedly played in the offense.

37. As the evidence was either insufficient as a matter of law and/or fact to prove Nunez was a leader or organizer, that he committed relevant conduct acts while on probation, and his attorney's failures are the "cause and prejudice" for these issues not being raised either at trial or on direct appeal, Nunez is entitled to be resentenced, at the least, at offense level 25, Criminal History category II, for a sentencing range of 63-78 months.

III. NUNEZ'S SPEEDY TRIAL ACT RIGHTS WERE VIOLATED, AND HIS ATTORNEYS FAILED TO EITHER MOVE FOR DISMISSAL OR RAISE THE ISSUE ON APPEAL.

38. Nunez was arrested on May 30, 2001, and a criminal complaint was filed. He has never been released from custody.

39. Nunez was not indicted until July 18, 2001, some 48 days later. This, in and of itself, was a violation of 18 U.S.C. § 3161(b).

40. 18 U.S.C. § 3161(b), states, in pertinent part"Any information or indictment charging an individual with the commission of an offense <u>shall</u> be filed within thirty day from the date on which such individual was arrested or served with a summons in connection with

such charges."

41. Although Nunez entered a plea of guilty to the late indictment, his attorney at the time should have moved to dismiss the indictment as untimely and in violation of the Speedy Trial Act and Nunez's Sixth Amendment Speedy Trial rights, instead of taking advantage of Nunez's inability to read, speak or write English, and most importantly, his lack of knowledge and understanding of the law.

42. Nunez, being in the said position totally relied upon his attorney to protect his rights, and all of his rights.

43. Had it not been for the attorney's failure to move for dismissal, the complaint, as well as the indictment, would have had to be dismissed as being in violation of 18 U.S.C. § 3161(b).

44. 18 U.S.C. § 3162 Sanctions, (a)(1), reads as follows:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. (amphasis added).

45. In order to trigger the thirty day limit under section 3161(b), "both a federal complaint and a federal arrest and/or federal summons are required." U.S. v. Lee, 818 F.2d 302, 305 (4th Cir. 1987)(cited in U.S. v. McGrier, 848 F. Supp. 649, 652-53 (S.D. W.Va. 1994).

46. Nunez was arrested on May 30, 2001, and placed into federal custody based upon the filing of a federal complaint. He was not indicted until 48 days later, on July 18, 2001, thus requiring the district court to dismiss the complaint.

47. As the indictment, also, was untimely, it also must be dismissed. The Court has no discretion in whether or not to dismiss the indictment, for dismissal is mandated by the Statute. See U.S. v. Thomas, 705 F.2d 709, 710 (4th Cir. 1983); U.S. v. Velas-

quez, 890 F.2d 717, 719 (5th Cir. 1989); U.S. v. Antonio, 705 F.2d 1483, 1486 (9th Cir. 1983)(all cited in McGrier, supra, at 653). The only determination left to be made by the court is whether to dismiss with or without prejudice; dismissal is required, nevertheless.

48.  Habeas corpus review is available to a convicted inmate on grounds not raised either at trial or on direct appeal. Kaufman v. U.S., 394 U.S. 217, 223-24 (1969).  In Withrow v. Williams, 507 U.S.___, 123 L.Ed.2d 407, 435, the Supreme Court stated that "[A]s early as 1868, this Court described it in these terms:

> "This legislation is of the most comprehensive character. It brings within the habeas corpus jurisdiction of every court and of every judge every possible case of privation of liberty contrary to the National Constitution, treaties, or laws.  It is impossible to widen this jurisdiction." Ex parte McCardle, 6 Wall 318, 325-326, 18 L.Ed. 816 (1868)

49.  28 U.S.C. § 2255 was enacted by Congress to test the validity of a conviction and/or sentence that was gained or imposed in violation of the U.S. Constitution and/or the laws of the United States. Nunez's claim is that his right to effective assistance of counsel was violated at the trial and appellate levels, and that his Statutory Speedy Trial Act rights, and his Sixth Amendment speedy trial rights were violated as a result thereof.

50.  Speedy Trial Act, and Sixth Amendment speedy trial claims, may be raised for the first time in a § 2255 proceeding. Hunt v. U.S. 456 F.2d 582 (3rd Cir. 1972)(citing Kaufman v. U.S., supra).  Likewise, if a Fourth Amendment violation claim may be raised for the first time in habeas review, by legal analogy a Speedy Trial Act and Sixth Amendment speedy trial violation may also be raised.

51.  As Withrow v. Williams, supra, teaches, the Supreme Court's ruling in Stone v. Powell, 428 U.S. 465 (1976), that Fourth Amendment violation claims that have been fully litigated at the trial and direct appeal levels may not be relitigated in a § 2255 proceeding, does not

apply to Fifth Amendment Miranda violation claims. Furthermore, the Supreme Court has also stated that the Stone v. Powell, supra, restriction is lifted when a habeas petitioner claims a Fourth Amendment violation under illegal search and seizure principles that occurred due to ineffective assistance of counsel. See Kimmelman v. Morrison, 477 U.S. 365 (1986).

52. Nunez never had an opportunity to advance his Speedy Trial Act and Sixth Amendment speedy trial right claims in either the trial or appellate courts due to his inability to read, speak and write English, to know and understand the law and his rights, and, most importantly, his counsels' failures to protect his rights by raising these vital issues at the trial and appellate levels.

53. Cause and prejudice has been shown without a doubt, for had it not been for both counsel failures to make the necessary motions to dismiss for Speedy Trial Act and Sixth Amendment speedy trial right violations, Nunez would not now be incarcerated, or at least he would have had the indictment dismissed, as the Statute commands under the circumstances as occurred herein.

54. Although Nunez has shown cause and prejudice, he is not required, under the circumstances, and the violations claimed, to demonstrate cause and prejudice. "[U]nless the defendant has violated some rule which required him to raise a claim or forfeit it, there is no procedural default, and the cause and prejudice standard does not apply." English v. U.S., 42 F.3d 473, at 477 (9th Cir. 1994) (citing U.S. v. Frady, 456 U.S. 152 (1982) and Davis v. U.S., 411 U.S. 233 (1973)).

55. In the instant matter, 18 U.S.C. § 3161(b) and § 3162(a)(1) do not require an accused to move for dismissal or forfeit the claim. This is so because the provision of the statute commands automatic

12

dismissal, without a motion, for its violation. Unlike 18 U.S.C. § 3161(c) and § 3162(a)(2), which includes a waiver of dismissal if the defendant fails to move for dismissal. Therefore, there is no procedural bar of Nunez's 18 U.S.C. § 3161(b) claim, and he need not make a showing of "cause and prejudice" in order to be entitled to habeas relief. <u>English</u>, supra.

56. As it has been clearly demonstrated that Nunez's rights pursuant to the Speedy Trial Act, as well as his Sixth Amendment speedy trial rights, have been violated herein, he is entitled to dismissal of the indictment, with prejudice.

57. Nunez has also made a clear showing of ineffective assistance of counsel for the reasons stated herein.

WHEREFORE, Petitioner NUNEZ respectfully requests that this Honorable Court grant the relief as requested in this Petition, and vacate the conviction for Speedy Trial Act violations, and for violations of his Sixth Amendment rights to speedy trial and effective assistance of counsel, or in the alternative to reduce his sentence in accordance with the facts as alleged and the arguments presented, together with all other and further relief as to this Court may seem just and proper. Everything stated herein is true to the best of my knowledge under penalties for perjury.

Dated: May 6, 2004
Petersburg, VA 23804

Respectfully Presented,

*/s/ Marino Nunez*

MARINO NUNEZ, PRO SE, (
PETERSBURG F.C.C. (LOW)
P.O. BOX 1000
PETERSBURG, VA 23804

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the forgoing §2255 Petition was duly served on the U.S. Attorney for the District of Massachusetts, by placing same in the U.S. Postal Srevice "Legal Mailbox" designated for that purpose, here at Petersburg F.C.C., with sufficient first-class postage affixed, this May 6, 2004, under 28 U.S.C. § 1746.

CERTIFICATE OF SERVICE

I hereby certify that the foregoing § 2255 petition was duly served upon the U.S. Attorney's Office for the District of Massachusetts, by placing same in the U.S. Postal Service "Legal Mailbox", designated for said purpose, here at Petersburg F.C.C. (Low), with sufficient first-class postage affixed, this May 7, 2004.

Dated: May 7, 2004
Petersburg, VA 23804

_____
MARINO NUNEZ

14