UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARINO NUNEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____) | CIVIL ACTION NO. 04-10993-RCL |

### RESPONDENT'S ANSWER TO, AND MOTION TO DISMISS, THE PETITION TO VACATE OR SET ASIDE CONVICTION AND/OR SENTENCE

The United States of America, Respondent, opposes and hereby moves to dismiss the "Petition to Vacate or Set Aside Conviction And/Or Sentence Pursuant to 28 U.S.C. § 2255" ("Petition") in the above-captioned proceeding. Petitioner Marino Nunez ("Nunez") raises three claims. First, Nunez claims that the Court's factual finding that Nunez was a leader or organizer in a drug enterprise was erroneous. Second, Nunez contends that he was deprived his Sixth Amendment right to confront a witness against him at his sentencing hearing. Finally, Nunez claims that the government violated his rights under the Speedy Trial Act.

Nunez's claims are legally without merit, and Nunez asserts no new facts that would merit an evidentiary hearing to evaluate. Accordingly, based on longstanding court precedent, this Petition should be dismissed without a hearing.

### RELEVANT FACTS AND PROCEDURAL POSTURE

The facts below are drawn entirely from this Court's Criminal Docket for case number 1:01-cr-10260-UA-ALL, the Presentence Report ("PSR"), and from the transcript of the sentencing hearing, attached hereto as Exhibit 1. Unless relevant to the United States' argument, the facts regarding Nunez's underlying criminal acts are omitted in the interest of economy.

Such facts are aptly summarized in the PSR. In its Statement of Reasons, this Court adopted the factual findings in the PSR. The law is well-settled that the sentencing court may consider facts in the PSR as reliable evidence. See United States v. Morillo, 8 F.3d 864, 872 (1st Cir. 1993).

On May 30, 2001, Nunez was arrested for violations of the Controlled Substances Act, 28 U.S.C. § 841. His arrest stemmed from a Drug Enforcement Administration investigation of him and several co-defendants since March 2001.

At the initial appearance for Nunez on May 30, 2001, the Government moved for a detention hearing pursuant to 18 U.S.C. §§ 3142(f)(1)(C) (maximum term of imprisonment of ten years or more as prescribed in the Controlled Substances Act) and (f)(2)(A) (risk of flight). This Court set the detention hearing for June 4, 2001.

On June 4, 2001, Nunez's counsel moved for a continuance and this Court reset the detention hearing for June 11, 2001.

On June 11, 2001, this Court (Smartwood, M. J., presiding) held Nunez's detention hearing. Counsel for Nunez was present. At this hearing, Nunez also orally moved for release on conditions.

On June 18, 2001, this Court entered an order for Nunez's detention.

On July 2, 2001, Nunez moved for review and thereafter revocation or amendment of the detention order. This Court (Lindsey, J., presiding) subsequently denied Nunez's motion on August 1, 2001.

On July 18, 2001, a grand jury empaneled by the U.S. District Court in Boston, Massachusetts, returned a five-count indictment against Nunez. Nunez was charged in Count One with conspiracy to distribute, and to possess with intent to distribute, heroin in violation of 21 U.S.C. § 846; in Counts Two through Four, with distribution of heroin in violation of 21

U.S.C. § 841(a)(1) on April 5, 2001; April 11, 2001; May 4, 2001; and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

On September 17, 2002, pursuant to a plea agreement, Nunez pled guilty to all five counts. At the sentencing hearing on February 10, 2003, this Court (Lindsay, J., presiding) heard Nunez's argument against the role-in-the-offense adjustment. Nunez contended that he was not a leader or organizer, but "a soldier who conspires sort of on a case-by-case kind of basis individually" with his co-defendants. Ex. 1 at App. 51. After hearing argument, the Court adopted the factual findings in the PSR which described Nunez's criminal drug activities and his relationship to co-defendants. The Court concluded that the four-level enhancement was appropriate because Nunez organized the drug transactions' logistics, he directed at least five people, the presence of uncut heroin suggested Nunez's higher position in the hierarchy, and he would have received a larger share of the proceeds from his transactions. Ex. 1 at App. 63-64. The Court found that Nunez was a leader or organizer of at least five participants and ordered a four-level sentence enhancement under the United States Sentencing Guidelines § 3B1.1(a). Accordingly, the Court determined that Nunez's total offense level was 29.

Also at this hearing, the Court determined that Nunez had a criminal history category of three. The Court based its determination on the PSR's findings. Specifically, the PSR found that Nunez violated his probation when engaging in drug dealing while still under a sentence imposed by the West Roxbury District Court. PSR at App. 23. The PSR reached this conclusion based on information provided by co-defendant Awilda Tejada ("Tejada"). Tejada proffered that she made trips in March and April 2001 to transport heroin for Nunez. PSR at App. 19. Tejada's reliable statements contributed to Nunez's increased criminal history category score: "The Probation Office believes that reliable information provided by [a cooperating witness] and

Awilda Tejeda, both of whom reported making multiple trips to New York to obtain heroin for the defendant, should be considered in determining the defendant's offense level." PSR at App. 34.  With a total offense level of 29 and a criminal history category III, the court found the applicable sentencing guideline range was 108 to 135 months.  The court sentenced Nunez to a 108-month term on each count to be served concurrently.

On May 6, 2003, Nunez appealed to the Court of Appeals for the First Circuit.  Nunez raised one issue.  Nunez argued that the facts did not support the district court's conclusion that Nunez was a leader or organizer; thus, the district court clearly erred in the upward adjustment of his sentence.  The First Circuit affirmed the conviction and sentence on September 10, 2003.  On May 13, 2004, Nunez filed this Petition under § 2255

## ARGUMENT

I.   NUNEZ HAS NO CLAIM FOR RELIEF UNDER 28 U.S.C. § 2255.

   A.   <u>Nunez Cannot Challenge The Factual Finding That He Was A Leader Or Organizer Because Such Finding Is Not Subject To Collateral Attack.</u>

28 U.S.C. § 2255 permits a prisoner to move the sentencing court to vacate or set aside his sentence.  A prisoner has four grounds to base a claim for relief: (1) the sentence was imposed in violation of the Constitution or United States law; (2) the court lacked jurisdiction to impose such sentence; (3) the sentence was in excess of the legal maximum; and (4) the sentence is otherwise subject to collateral attack. <u>Knight v. United States</u>, 37 F.32 769, 772 (1st Cir. 1994).  A court may summarily dismiss a § 2255 petition without a hearing "if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Murchu v. United States</u>, 926 F.2d 50, 57 (1st Cir. 1991) (quoting <u>Dziurgot v. Luther</u>, 897 F.2d 1222, 1225 (1st Cir. 1990).

4

A prisoner has limited availability of § 2255 attacks for claims that do not raise constitutional errors. Knight, 37 F.3d at 772. Absent exceptional circumstances, a non-constitutional claim that could have been asserted on direct appeal, but was not, may not be raised by collateral attack under § 2255. Id. Exceptional circumstances constitute "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Id. A petitioner has a higher standard under a collateral attack than a criminal defendant challenging his sentence on direct appeal. See id. ("Errors warranting a reversal on direct appeal will not necessarily support a collateral attack."). The reason for this restriction is that a § 2255 motion is not a substitute for direct appeal. Id.

Nunez's first claim is that the Court's factual finding that he was a leader or organizer in a drug enterprise was erroneous which led to a misapplication of the sentencing guidelines. This is a collateral attack. Nunez admits this much in his Petition: "[t]his issue was argued on direct appeal, and would ordinarily be procedurally barred from being raised in a § 2255 petition." Nunez Pet. at ¶ 28. Nothing Nunez alleges comes close to amounting to a "complete miscarriage of justice." Nunez does not allege any new facts. He merely makes new conclusory statements about facts previously presented to this Court. This claim is fundamentally another stab at an issue that has been argued twice before, once at sentencing and another on direct appeal. In effect, Nunez is attempting to use § 2255 as a substitute for appeal. Because this claim is unexceptional and states only conclusions, Nunez cannot raise it as a collateral attack under § 2255 and is not entitled to a hearing on the claim's merits.

  B. <u>There Was No Violation Of Nunez's Rights Under The Sixth Amendment's Confrontation Clause Or Due Process Rights.</u>

Nunez's second claim argues that he never had an opportunity to cross-examine a co-

defendant, Awilda Tejada ("Tejada"), whose hearsay statement was relied upon by the Court. Nunez Pet. at ¶ 34. Based on this evidence, the Court ultimately found that Nunez committed a crime while on probation which placed Nunez in a higher Criminal History Category, which subjected him to a higher sentence, than where Nunez would have been without this evidence, and thus, eligible for a lesser sentence. Id. at ¶¶ 34-35. Nunez grounds this argument on his constitutional rights under the Sixth Amendment's Confrontation Clause and due process, and alleges that the failure to raise it earlier constitutes ineffective assistance by his counsel. Id. at ¶ 35. This claim is also meritless.

> 1.  Nunez is procedurally barred from raising his Sixth Amendment claim under his § 2255 petition.

A constitutional claim falls within the scope of § 2255. See 28 U.S.C. § 2255. However, failure to raise a constitutional issue on direct appeal will bar raising the issue on collateral attack under § 2255 unless a defendant can show cause for failure and actual prejudice. Knight, 37 F.3d at 772; Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002) (holding that a defendant procedurally defaulted his Sixth Amendment claim by not raising the issue at trial or on direct appeal). A defendant who does not attempt to call the witnesses against him at his sentencing waives his right to cross-examine them. United States v. Shrader, 56 F.3d 288, 295 (1st Cir. 1995). Such a waiver also precludes a defendant from asserting a Confrontation Clause violation on appeal. Id.

The waiver rule is appropriate in this case because Nunez never requested to cross-examine the witnesses against him. The transcript of the sentencing hearing shows that Nunez's counsel made reference to the fact that the PSR relied on information from persons who had never testified subject to cross examination.. See Ex. 1 at App. 54 ("[W]e're talking about situations where neither of those witnesses are here to make a presentation to the Court and to

6

give me an opportunity to cross-examine..."). However, Nunez's counsel chose not to call these individuals to testify at the sentencing hearing. Likewise, counsel did not raise any objections after the Court recited Nunez's criminal history category, offense level, and the corresponding guideline ranges for criminal penalties. Id. at App. 64-65. From this record, Nunez through counsel waived his right to cross-examine at his sentencing. See Shrader, 56 F.3d at 295. Nunez further failed to raise this issue on direct appeal. Nunez Pet. at ¶ 31 ("[T]his issue was not argued on direct appeal..."). Because Nunez did not raise his Sixth Amendment claim at sentencing or on direct appeal, Nunez procedurally defaulted in bringing this claim under § 2255. The Court does not need to reach the merits of this claim unless Nunez can show that the failure to raise the issue was ineffective assistance of counsel, resulting in actual prejudice to him. See Knight, 37 F.3d at 772.

> 2. Nunez fails to show the existence of actual prejudice when his attorneys acted strategically in choosing not to confront Tejada and reasonably in omitting the Confrontation Clause claim on direct appeal.

To show actual prejudice supporting a claim of ineffective assistance of counsel, Nunez must show, by a preponderance of the evidence, that Nunez's counsel's conduct in failing to request an evidentiary hearing in order to cross examine the witnesses relied on in the PSR fell below the standard of reasonably effective assistance and that counsel's errors prejudiced Nunez's defense. See Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984). Courts presume an attorney's conduct fall within a wide range of reasonable professional assistance. Tuesta-Toro v. United States, No. 99-1371, 2000 WL 1160442, *3 (1st Cir. 2000). Thus, a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. Id. The decision to call – or not to call – a particular witness is almost always strategic. Id.

7

Prejudice exists when "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Gonzalez-Soberal, 244 F.3d at 278. In determining the existence of prejudice, a court should focus on the "fundamental fairness of the proceeding" rather than speculate on the errors' effect on the outcome. Id.

Nunez cannot defeat a presumption of effective assistance. Nunez alleges no new facts in his Petition where this Court may infer ineffective assistance. Nunez states bald conclusions attacking his attorneys' performances, while the record instead suggests that his lawyers made reasonable, strategic choices. His sentencing counsel was aware of the right to cross-examine Tejada. See Ex. 1 at App. 54. Counsel opted not to cross-examine Tejada, most likely to avoid opening the proverbial "can of worms" against his client. This Court may have heard testimony that would have been to Nunez's detriment. Counsel's decision not to cross-examine Tejada or any other witness was purely strategic in nature. With respect to his appeal, Nunez presents no new facts that show his appeal was unfair or would have produced a favorable outcome. As discussed above, Nunez waived his right to cross-examine at his sentencing hearing. If Nunez's appellate attorney raised this claim on direct appeal, the First Circuit, following its own precedent, would have ruled that Nunez's waiver precludes him from raising a Confrontation Clause claim on appeal. See Shrader, 56 F.3d at 295. Not raising this claim on appeal did not treat Nunez's procedural rights unfairly nor would it have produced a different result. Nunez's attorneys made strategic decisions that would best serve Nunez and avoid raising untenable arguments. Therefore, he cannot succeed on this claim.

Nunez asserts that his confrontation clause rights were violated by the failure to bring the witnesses forth. The simple answer to this claim is "in the usual case, a defendant's Sixth

8

Amendment right to confront witnesses against him does not attach during the sentencing phase." United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992).  Moreover, having failed to request an evidentiary hearing, Nunez waived the hearing.  Accordingly, this claim too is without merit.

        C.    Nunez's Speedy Trial Act Rights Were Not Violated Because Delays Resulting From Pretrial Motions And Detention Proceedings Are Excluded From The Speedy Trial Calculations.

The Speedy Trial Act ("STA") mandates that a defendant must be indicted within thirty days from the date of the defendant's arrest.  18 U.S.C. § 3161(b).  Failure to do so requires a court dismissal of the complaints against the defendant. 18 U.S.C. § 3162(a)(1).  However, in computing the time between arrest and indictment, the STA excludes "any periods of delay resulting from other proceedings concerning the defendant."  18 U.S.C. § 3161(h)(1).  Among the kinds of delays that are excludable from the calculation include: "(F) delay resulting from a pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;...(J) delay reasonable attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." Id.  The delay resulting from a judge granting a defendant's request for continuance is also excludable. 18 U.S.C. § 3161(h)(8)(A).

It is well-settled law that time is excludable as "delay resulting from any pretrial motion" due to the pendency of a motion for pretrial detention. See United States v. Noone, 913 F.2d 20, 25 (1st Cir. 1990) (excluding 14 days between the motion for pretrial detention and order for detention).  Similarly, the elapsed time for pending motions for review of pretrial detention orders is excludable. Id. at 27 (excluding 28 days between defendant's request for review and its denial).

9

      1.    <u>Nunez's STA claim is without merit because 35 days out of the 48 days between the dates of his arrest and indictments, were excludable under the STA.</u>

Nunez argues that the 48 days that elapsed between his arrest date, May 30, 2001, and his date of indictments, July 18, 2001, extends beyond the STA's 30-day requirement as provided in 18 U.S.C. § 3161(b). Nunez Pet. at ¶¶ 38-40.  Nunez further suggests that this 48-day period automatically violates the STA, citing 18 U.S.C. § 3162(a)(1) for support. Nunez Pet. at ¶¶ 44 and 55.

This argument, at best, neglects facts and misinterprets statutory law.  While Nunez correctly counted 48 days between the dates of his arrest and indictments, he fails to mention the pendency of a pretrial motion for detention and his motion to continue the detention hearing. The resulting delays from these motions are excludable in the computation of time under the STA provisions that exclude certain delays resulting from pretrial motions, proceedings concerning the defendant, and requests for continuance.

A computation of the time resulting from these motions' delay demonstrate that 35 days out of the 48 days between Nunez's dates of arrest and indictments were excludable under the STA, and thus, no STA violations occurred.  The Criminal Docket for Nunez's underlying criminal proceedings show that on May 30, 2001, the date of Nunez's arrest and initial appearance, this Court set his detention hearing for June 4, 2001.  Docket ("Dkt.") at Filing Date 05/30/2001, #2.  Thus, May 30th triggers the count of days that the STA excludes. <u>See</u> <u>Noone</u>, 913 F.2d at 25.  By June 4, five days of excludable time passed, and on that date, Nunez's counsel moved to continue the detention hearing. <u>See</u> Dkt. at Filing Date 06/04/2001, #6.  Seven excludable days later, this Court heard the continued detention hearing on June 11 which brings the excludable total days to 12. <u>See</u> Dkt. at Filing Date 06/01/2001, #7.  After pending its

detention decision, on June 18, the 19th consecutive excludable day, this Court ordered for Nunez's detention and denied Nunez's oral motion for release on conditions. See Dkt. at Filing Date 06/18/2001, #12.  At this point, the consecutive excludable days end.  On July 2nd, Nunez restarts the tally by moving for review and thereafter revocation of amendment of detention order. See Dkt. at Filing Date 07/02/2001, #13-14.  Sixteen excludable days later (Nunez's motion for review was heard after the grand jury indicted him), the grand jury returned five indictments against Nunez on July 18. See Dkt. at Filing Date 07/18/2001, #15.  The United States counts 35 excludable days out of the 48 days between Nunez's dates of arrest and indictments.  Thus, only thirteen nonexcludable days elapsed before Nunez's indictment which is insufficient to prove a claim of a STA violation.  The undisputable facts combined with the well-settled law completely contradict Nunez's argument and render his claim without merit.

        2.       <u>Nunez's Derivative Claims to His STA Argument Are Meritless.</u>

Nunez ties his Sixth Amendment claim to his STA argument, and thus, makes no separate Sixth Amendment argument. See Nunez Pet. at ¶ 49.  As presented above, sufficient facts and law prove that the United States did not violate Nunez's rights to a speedy trial under the STA.  Therefore, Nunez's has no Sixth Amendment claim because there was no violation of his STA rights.

Nunez's ineffective assistance claim is also attached to his STA argument. See Nunez Pet. at ¶¶ 52-53, 57.  Again, because no STA violation occurred, Nunez has no basis for challenging the quality of his counsel's assistance.  This contention is likewise meritless.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Nunez's Petition under § 2255 and dismiss this action.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:      /s/ Nancy Rue
        Nancy Rue
        Assistant U.S. Attorney
        John Joseph Moakley U.S. Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA 02210

## **CERTIFICATE OF SERVICE**

       This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the U.S. mail a copy of the same in an envelope bearing sufficient postage for delivery:

    Marino Nunez
    Petersburg FCC
    PO Box 1000
    Petersburg, VA 23804

this 29th day of October, 2004

        /s/ Nancy Rue